UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIEN GABILLY and MARIUS ZEMACHE,<br><br>Plaintiffs,<br><br>-against-<br><br>BOUCHERIE LLC, BOUCHERIE PAS LLC, and EMIL STEFKOV,<br><br>Defendants. | Case No. 1:19-cv-07240(AT) |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and among Plaintiffs Julien Gabilly, Marius Zemache, and Yudum Ozturk, individually and on behalf of the Class (as defined below), and Boucherie LLC, Boucherie PAS LLC, and Emil Stefkov (collectively, the "Defendants" and together with Named Plaintiffs, the "Parties").

## RECITALS AND BACKGROUND

WHEREAS Named Plaintiffs Julien Gabilly and Marius Zemache filed the above-captioned class and collective action in the United States District Court for the Southern District of New York, on August 2, 2019, alleging certain wage and hour among other violations (the "Litigation");

WHEREAS Named Plaintiffs Yudum Ozturk and Gabriel Mustin later joined Named Plaintiffs Julien Gabilly and Marius Zemache in asserting the alleged wage and hour violations against Defendants;

WHEREAS, the Parties have engaged in and have completed extensive informal discovery in connection with the potential settlement of this matter;

WHEREAS, Named Plaintiffs and Defendants, through their counsel, have also participated in extensive arms-length negotiations and in a full-day mediation before experienced mediator Ruth Raisfeld, Esq. in an effort to settle the disputes underlying the Litigation resulting in a binding Memorandum of Understanding dated March 4, 2020 agreeing to resolve all claims and disputes among them (except for Gabriel Mustin, who is releasing wage and hour claims only), as well as all wage and hour claims with respect to the entire putative class and collective ("MOU");

WHEREAS, Defendants have denied and continue to deny all of the material allegations by Named Plaintiffs in the Litigation and have denied and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, solely for the purpose of settling this Litigation, and without admitting any wrongdoing or liability, Defendants have agreed to disseminate a notice of settlement pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") and Rule 23 of the Federal Rules of Civil Procedure ("FRCP") to all Class Members (as defined below);

WHEREAS, the purpose of this Agreement is to settle fully and finally all State Law Claims and FLSA Claims (as defined below) among the Named Plaintiffs, Class Members, and the Defendants, including all claims asserted in the Litigation in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants and the impact of the Agreement on Named Plaintiffs and Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Class Counsel (as defined below) is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interest of the Named Plaintiffs and Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree, on their own behalf and on behalf of the putative Class, to a full and complete settlement of the Litigation on the following terms and conditions:

1.      **DEFINITIONS**

      1.1.     **"Action" or "Litigation."**   The Action or Litigation shall mean the collective and class action commenced on August 2, 2019, in the United States District Court for the Southern District of New York, captioned *Gabilly v. Boucherie LLC, et al.,* Civ. No. 1:19-cv-07240(AT).

      1.2.     **"Administrator" or "Claims Administrator."** The Administrator or Claims Administrator will be a third-party claims administrator upon which the Parties mutually agree.

      1.3.     **"Agreement."** Agreement means this Settlement Agreement and Release.

      1.4.     **"Class" or "Class Member(s)."** Class or Class Members shall be defined as: all current and former tipped servers, bussers, runners, bartenders, sommeliers, and similarly situated employees of Boucherie LLC, Boucherie PAS LLC, and/or Petit Boucherie LLC who worked during the Relevant Time Period and who do not opt-out of the Litigation as explained below. Class Members acknowledge that they agree to settle and release all State Law Claims and FLSA claims that they may have against Defendants or Releasees (as defined below). Class Members are approximately up to 330.

**1.5.    "Class Counsel" or "Plaintiffs' Counsel."**  Class Counsel or Plaintiffs' Counsel shall mean Darren P.B. Rumack of The Klein Law Group, 39 Broadway, Suite 1530, New York, NY 10006.

**1.6.    "Class Member List."** The Class Member List shall mean a list of all Class Members, identified by: (i) name; (ii) last known address; (iii) job position(s) or department(s); (iv) dates of employment; and (v) social security numbers, if available, contained in a Microsoft Excel spreadsheet (or another computer readable format, if unable to produce such information in a Microsoft Excel document) that shall remain confidential and that the Defendants shall provide to Plaintiffs' Counsel and the Claims Administrator (except that Social Security Numbers shall only be provided to the Claims Administrator).  The Class Member List is to be used by Plaintiffs' Counsel and the Claims Administrator to effectuate settlement, and may not be copied, disseminated or used for any other purpose;

**1.7.    "Court."** Court shall mean the United States District Court for the Southern District of New York.

**1.8.    "Days."**  Unless otherwise specified, days shall mean calendar days.

**1.9.    "Defendants."**  The Defendants are Boucherie LLC, Boucherie PAS LLC, and Emil Stefkov.

**1.10.    "Defense Counsel" or "Defendants' Counsel."**  Defense Counsel or Defendants' Counsel shall be Alexander Leonard and JoAnna Tsoumpas of Golenbock, Eiseman, Assor, Bell, & Peskoe LLP.

**1.11.    "Fairness Hearing."**  The Fairness Hearing shall mean the hearing before the Court, relating to the application for final approval, unless otherwise scheduled by the Court without the filing of a motion.

**1.12.    "Final Effective Date."**  The Final Effective Date shall be within thirty (30) days after the Court has entered a Final Approval Order approving the Agreement, provided the time to appeal from the Final Order has expired and no notice of appeal has been filed.  In the event a notice of appeal is filed, the Final Effective Date shall be when the latest of the following events has occurred: (1) any appeal from the Final Approval Order has been finally dismissed, (2) the Final Approval Order has been affirmed on an appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in the affirmance of the Final Order in a form substantially identical to the form of the Final Approval Order entered by the Court.

**1.13.    "Final Approval Order."** The Final Approval Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, and dismissal of the Litigation with prejudice.

**1.14.    "FLSA Claims."** The FLSA Claims shall mean all wage and hour claims that were or could have been asserted pursuant to the Fair Labor Standards Act on behalf of Named

Plaintiffs and the Class. Released FLSA Claims include, but are not limited to, all claims under federal law for unpaid minimum or overtime wages, tip credit claims, tip misappropriation claims, and other related wage and hour claims, interest on such claims, and attorneys' fees, expenses, and costs related to such claims.

1.15.  **"Motion for Final Approval."** The Motion for Final Approval shall mean the Named Plaintiffs' anticipated motion, with supporting documents and materials, for the Court's final approval of the settlement.

1.16.  **"Named Plaintiffs."** The Named Plaintiffs shall mean Julien Gabilly, Marius Zemache, Yudum Ozturk, and Gabriel Mustin.

1.17.  **"Notice" or "Notices."** Notice or Notices shall mean the Court-approved Notice of Proposed Settlement, including notice of an opportunity to opt-out and/or object to the proposed settlement.

1.18.  **"Objector."** An Objector shall mean any Class Member who properly files an objection to this Agreement, and does not include any individual who opts out of this Agreement.

1.19.  **"Opt-Out Statement."** An Opt-out Statement is a written signed statement that a Class Member (other than Named Plaintiffs) has decided to opt out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all New York State Law Claims, even if he or she does not cash his or her settlement check(s) in this matter. Only Class Members (other than Named Plaintiffs) who endorse their settlement checks will waive and release their FLSA Claims as well. Class Members (other than Named Plaintiffs) who submit an Opt-out Statement retain any FLSA and/or New York State Law Claims.

1.20.  **"Parties."** The Parties shall refer to Named Plaintiffs, the Class, and Defendants, collectively.

1.21.  **"Plaintiffs."** Plaintiffs shall mean Named Plaintiffs and the Class.

1.22.  **"Preliminary Approval Order."** The Preliminary Approval Order shall mean the Order entered by the Court preliminarily approving the terms and conditions of the Agreement and certifying the Class for settlement purposes only.

1.23.  **"Relevant Period" or "Relevant Time Period."** The Relevant Period or Relevant Time Period means August 2, 2013 through the present.

1.24.  **"Reserve Fund."** The Reserve Fund shall mean $3,000 set aside from the Settlement Fund to cover errors and omissions in the calculation of Class Members' individual shares of the settlement, including, but not limited to: (1) claims from individuals claiming to be Class Members, but not identified as such by Defendants; (2) any errors regarding Class Members' weeks worked; and (3) any other unforeseeable costs or disbursements associated with the settlement. Prior to distribution, any amount remaining of the $3,000 Reserve Fund will be reallocated pro rata among Class Members.

**1.25.** **"Restaurants."** The Restaurants shall mean Boucherie LLC, Boucherie PAS LLC, and Petit Boucherie LLC and all of their current and former locations and/or offices.

**1.26.** **"Settlement Account."** The Settlement Account shall mean a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank reasonably acceptable to the Parties.

**1.27.** **"Settlement Checks."** The Settlement Checks shall mean the checks issued to Class Members from the Settlement Account by the Administrator as calculated by the Administrator in accordance with this Agreement.

**1.28.** **"Settlement Fund."** The Settlement Fund shall mean the aggregate amount that can be paid by Defendants pursuant to this Agreement and includes any settlement amounts, enhancement awards, reserves, and attorneys' fees, costs, and expenses, but excludes the Mediator's Fee (defined below) and the Administrator's Fee (defined below).    Under no circumstances shall the Settlement Fund exceed Fifty-Nine Thousand Dollars and Zero Cents ($59,000.00), excluding employer's share of payroll taxes, regardless of the number of Class Members.

**1.29.** **"State Law Claims."** The State Law Claims shall mean all wage and hour claims that were or could have been asserted under New York State or other analogous state or local laws by Named Plaintiffs and Class Members.  Released New York State Law Claims include, but are not limited to, all claims under state law for unpaid minimum or overtime wages, tip credit claims, tip misappropriation claims, unpaid spread-of-hours claims, unpaid call-in pay claims, service charge claims, claims for charges purporting to be gratuities, Wage Theft Prevention Act penalties, and any other related wage and hours claims, interest on such claims, and attorneys' fees, expenses and costs related to such claims.

## 2.    INITIAL PROCEDURE ISSUES

**2.1.** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

**2.2.** **Retention of the Administrator.** Within 10 days after the execution of this Agreement, Defendants shall select and engage the Administrator to mail Notices and administer the settlement.

**2.3.** **Responsibilities of the Administrator.** The Administrator shall be responsible for:

(A)    preparing, printing, and disseminating Notice to the Class and any other notices required by the Court or by law;

(B)    copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;

(C)     promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections, or other written or electronic communications from the Class which the Administrator receives;

(D)     keeping track of Opt-out Statements and objections or other written or electronic communications from the Class which the Administrator receives including but not limited to maintaining the original mailing envelope in which the request was mailed;

(E)     mailing all required tax forms to Named Plaintiffs, Class Members, and to Class Counsel as provided herein as well as to all applicable governmental bodies and taxing authorities;

(F)     setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Plaintiffs' Counsel, the Claims Administrator and to Named Plaintiffs;

(G)     calculating the amount of each Named Plaintiff and Class Member's Settlement Check;

(H)     calculating the employer-side payroll taxes required pursuant to the settlement;

(I)     calculating and paying each Named Plaintiff and Class Member's taxes (as well as paying the employer-side payroll taxes required by the settlement) and preparing appropriate tax forms for Defendants and for each Class Member;

(J)     mailing the Settlement Checks to Class Members and Named Plaintiffs as well as all Enhancement Awards;

(K)     ascertaining using commercially reasonable efforts current address and addressee information for each Notice returned as undeliverable and the mailing of the Notice(s);

(L)     responding to inquiries of the Class regarding procedures for filing objections and Opt-out Statements;

(M)     referring to Plaintiffs' Counsel all inquiries by the Class regarding matters not within the Administrator's duties specified herein;

(N)     responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties specified herein;

(O)     promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

(P)     maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;

(Q)     confirming in writing to Plaintiffs' Counsel and Defense Counsel its completion of the administration of the settlement;

(R)     timely responding to communications from the Parties or their counsel; and

(S)     such other tasks on which the Parties mutually agree.

**2.4.    Class Notice Administration Reports.**  In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly and provide to Plaintiffs' Counsel and to Defense Counsel: (a) a list of all Class Members with their estimated awards; (b) a list of all Class Members who filed timely objections; and (c) a list of all Class Members who requested to opt out of the settlement at any time during the opt-out period and their estimated award(s).  The Administrator shall also provide Defense Counsel with an updated address list for the Class. Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party regarding the status of the mailing of the Notices of the Class, the claims administration process, and the distribution of the Settlement Checks or any other aspect of the claims administration process.  The Administrator shall also work jointly with Plaintiffs' Counsel and Defense Counsel to prepare and submit affidavit(s) and other supporting materials regarding the class notice process in support of the application for the Final Approval Order.

**2.5.    Notice to Class.**  The Notice will inform Class Members about this Settlement and will also advise them of their estimated Individual Settlement Award, the opportunity to object to, opt out of, do nothing and remain in the Class in order to obtain a Settlement Check pursuant to this Agreement, and/or appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order by the Court, the Administrator will mail to all Class Members, via First Class United States Mail, the Court-approved Notices of Proposed Class Action Settlement.  The Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address during the Notice period.  The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.6.    Access to the Administrator.**  The Parties will have equal access to the Administrator throughout the claims administration period.  Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all accurate information available and necessary to reasonably assist the Administrator in performing its duties.

**2.7.    Settlement Distribution Report.**  In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly and provide to Plaintiffs' Counsel and to Defense Counsel: (a) a list of all Class Members with their estimated awards; (b) a list of all Class Members who filed timely objections; and (c) a list of all Class Members who requested to opt out of the settlement at any time during the opt-out period and their estimated award(s).  The Administrator shall also provide Defense Counsel with an updated address list for

the Class. Throughout the period of claims administration, the Administrator will provide reports to the Parties upon request by either Party regarding the status of all mailings the claims administration process, and the distribution of the Settlement Checks or any other aspect of the claims administration process.

### 2.8.    Motion For Preliminary Settlement Approval.

(A)    Plaintiffs' Counsel shall file an unopposed motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include (i) the proposed Notice of Proposed Class Settlement; (ii) a proposed Preliminary Approval Order; (iii) an executed version of this Agreement; and (iv) the necessary documents, memoranda, affidavits, and exhibits for purposes of certifying a Class under FLSA § 216(b) and FRCP 23, for settlement purposes only, and preliminarily approving the Agreement.

(B)    The Preliminary Approval Motion will also seek: (i) the setting of a date for individuals to opt out of this Agreement and/or provide objections to this Agreement, which date will be forty-five (45) days from the initial mailing of Notice to the Class Members by the Administrator; and (ii) to set a date for the Fairness Hearing for the Final Approval of the Settlement, which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Preliminary Approval Order.

(C)    The proposed Preliminary Approval Motion, including but not limited to the proposed Notice of Proposed Class Action Settlement and proposed Preliminary Approval Order, shall be drafted by Plaintiffs' Counsel, but subject to reasonable comment, revision, and approval by Defense Counsel.

(D)    Plaintiffs' Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and "Dismissal with Prejudice" that will, among other things, in accordance with this Agreement: (1) approve the settlement as fair, adequate, and reasonable; (2) approve the proposed notice to the Class; (3) incorporate the terms of the Release, as described herein; (4) dismiss the litigation with prejudice; (5) award Plaintiffs' Counsel fees, expenses, and costs (to the extent approved by the Court); (6) award the Enhancement Awards (to the extent approved by the Court); and (7) appoint the Administrator and approve the Administrator fees and expenses.

(E)    The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and dismissal of the Litigation with prejudice.  Any disputes which arise between the Parties related to the Parties' efforts to obtain a Preliminary Approval Order, Final Approval Order, dismissal of Litigation with prejudice shall be submitted to the mediator, first, to attempt to resolve the dispute and if such resolution may not be obtained, then to the Court.

### 2.9.    Class Member List. Within fourteen (14) days of the Court's entry of the Preliminary Approval Order, Defense Counsel will provide Plaintiffs' Counsel and the Administrator, in electronic form and for all Class Members, the Class Member List.    All information provided regarding the Class will be treated as confidential information by Plaintiffs'

Counsel and the Administrator. Said information will not be used by Plaintiffs' Counsel and the Administrator for any other purpose than to effectuate the terms of settlement.

### 2.10.  Opt-Outs.

(A)    Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Administrator that states he or she is opting out of the settlement, and include his or her name, address, telephone number, and statement indicating his or her intention to opt out such as: "I opt out of the wage and hour settlement." ("Opt-Out Statement."). To be effective, an Opt-Out Statement must be post-marked or received by the Administrator within forty-five (45) days after the initial mailing of Notice to the Class.

(B)    The end of the time period to opt out of the settlement ("Opt-Out Period") shall be forty-five (45) days after the initial mailing of Notice to the Class.

(C)    The Administrator will send a final list of all Opt-Out Statements to Plaintiffs' Counsel and Defense Counsel no later than fifteen (15) days prior to the Fairness Hearing.  The Administrator will retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(D)    Any Class Member who does not submit an Opt-Out Statement pursuant to this Agreement will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the dismissal with prejudice in this case, and have any State Law Claims released and dismissed. Class Members who endorse their settlement check(s) will also release their FLSA Claims.  For clarity, notwithstanding any contrary statement in this Agreement, Named Plaintiffs are automatically deemed to have opted-in to the Action for settlement purposes and may not opt-out of the settlement for any reason, as Named Plaintiffs are represented and have been advised by their counsel, they fully understand the claims they are waiving herein, and they have already agreed to be bound to the settlement and releases herein.

### 2.11.  Objections to Settlement.

(A)    Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Administrator via First-Class United States Mail post-marked by forty-five (45) days after the initial mailing of Notice to the Class.  The statement must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address, and telephone number for the Class Member making the objection.  The Administrator will stamp the date received on the original and send copies of each objection, with supporting documents, to Plaintiffs' Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection.  The Administrator shall provide all objections in its final affidavit to be filed with the application for Final Approval no later than fifteen (15) days prior to the Fairness Hearing.

(B)    An Objector also has the right to appear at the Fairness Hearing, either in person or through counsel hired by an Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written

objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a Class Member, and any person who has requested exclusion may not submit objections to the settlement. An objection does not constitute the filing of an Opt-Out Statement. No Class Members may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

### 2.12. Fairness Hearing and Motion for Final Approval and Dismissal.

(A)     In accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file an unopposed Motion for Final Approval, with supporting documents and materials for final Approval of the settlement, which shall be first subject to review, revision, and approval by Defendants. The Motion for Final Approval may contain a compliance affidavit from the Administrator, and application for attorneys' fees, and supporting affirmation and documents from Class Counsel regarding the fairness, adequacy, and reasonableness of the Settlement or any aspect related to this Agreement. The Motion for Final Approval must also include a proposed Final Approval Order.

(B)     At the Fairness Hearing and through the Motion for Final Approval, the Parties will request that the Court, among other things, in accordance with this Agreement: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to the Class Members and Named Plaintiffs; (3) order the approved attorneys' fees, expenses, and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (4) approve Defendants' agreement to pay the Administrator's fees and expenses separately from the settlement; (5) order the approved Enhancement Awards be paid out of the Settlement Account; (6) order the dismissal with prejudice of the Litigation and all State Law Claims by all Class Members who did not opt-out; (7) dismiss the FLSA Claims for Class Members who endorsed their settlement check(s); (8) enter an order permanently enjoining the Named Plaintiffs and all Class Members from pursuing and/or seeking to reopen claims that have been released pursuant to this Agreement; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, to the interpretation or implementation of this Agreement and of the settlement contemplated thereby until all payments are completed.

### 2.13. Effect of Failure to Grant Final Approval. In the event the Court fails to enter the Final Approval Order in accordance with this Agreement, or such Final Approval Order does not become Effective as defined herein, or the Court issues an order finally approving the Agreement in a form materially different from the Agreement, the Parties jointly agree to (a) seek reconsideration or appellate review of the decision denying the Final Approval Motion, or (b) attempt to renegotiate a mutually agreeable settlement to address the issues raised by the Court and seek Court approval of the renegotiated settlement. In the event any reconsideration is denied or a mutually agreed upon settlement cannot be approved, the Parties shall have no further rights or obligations under this Agreement and the Litigation will proceed as if no

settlement had been attempted and the class action certification stipulated to herein shall be void *ab initio.*

> **2.14.    Discretionary Termination by Defendants Due to Opt Outs.**  In the event that five percent (5%) or more of Class Members, excluding the Named Plaintiffs, timely opt out of the Agreement pursuant to Section 2.9, any Defendant may, at their sole discretion, elect to void the Agreement prior to the Fairness Hearing by informing Class Counsel or the Court in writing.

3.    **SETTLEMENT TERMS**

> **3.1.    Settlement Fund Computation and Allocations.**

> > (A)    **Settlement Fund Formula.**  Individual Class Members' proportionate shares of the Settlement Fund shall be computed pursuant to the following formula:

> > > (1)    Class Members employed by the Restaurants during the Relevant Time Period shall receive 1 point for every week and/or partial week worked for the Restaurants during the Relevant Time Period.

> > > (2)    The Settlement Fund, after deductions for court approved attorneys' fees and expenses, enhancement awards, the Reserve Fund, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all the Class Members and any points that would have been attributable to any individuals who opted out of the settlement had they remained Class Members.

> > > (3)    Each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

> > > (4)    Only Class Members who do not timely opt out under the terms of this Agreement shall be entitled to receive their Individual Settlement Amount.  Any funds attributable to Individual Settlement Amounts for Class Members who timely opt out under the terms of this Agreement shall remain with Defendants.

> > > (5)    There will be a minimum allocation of $50.00, such that no Class Member who does not timely opt out under the terms of this Agreement shall receive an Individual Settlement Amount less than $50.00, which shall be drawn pro rata from the awards from the other Class Members.

> > (B)    **Enhancement Awards to Named Plaintiffs.**  Class Counsel shall seek Court approval for the payment of Enhancement Awards to certain Named Plaintiffs in consideration for the work performed on behalf of the Class and the Releases in Section 4.1(d), which shall not exceed the total amount of Nine Thousand Five Hundred Dollars and NO/Cents ($9,500).  The Enhancement Awards shall be made as follows: (1) Julien Gabilly - $4,000, (2) Marius Zemache - $4,000, and (3) Yudum Ozturk - $1,500 (collectively, the "Enhancement Awards").  Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not

increase the Settlement Fund. The substance of Plaintiffs' application for Enhancement Awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise affect the Court's Final Approval. Any reduction of Enhancement Awards shall be available for distribution pro-rata to Class Members in accordance with the Settlement Fund Formula in Section 3.1(A).

(C)    **Maximum Payment.** The Parties expressly acknowledge that Defendants shall not be required to pay more than the Settlement Fund of Fifty-Nine Thousand Dollars and Zero Cents ($59,000.00) to the Class Members, Plaintiffs' Counsel, Claims Administrator, Plaintiffs or to anyone else (apart from the employer's share of payroll taxes, the Mediator's Fee (defined below), and the Administrator's Fee (defined below)), regardless of the number of Class Members included in this settlement, and such amount is ample consideration for the Releases and other obligations of the Class Members and Plaintiffs' Counsel.

(D)    **Payment to the Settlement Fund.** The Settlement Fund shall be funded and paid by Defendants within fifteen (15) days of the Final Effective Date, which shall be made to the Administrator to be held in escrow for use solely for purposes of this settlement. Any interest earned on the Settlement Fund held in escrow shall reduce Defendants' total settlement obligation accordingly. There shall be no penalty to Defendants for any early payments or prepayments made pursuant to this settlement. All money paid shall be returned to Defendants immediately should the settlement be void, be terminated, or fail to result in a Final Approval Order.

(E)    **Mailing of Settlement Checks.** The Administrator shall, within forty-five (45) days of the Final Effective Date, send Settlement Checks comprising the Plaintiffs' Individual Settlement Amounts, Plaintiffs' Counsels' approved professional fees and expenses, and any Enhancement Awards to the Class Members, Plaintiffs' Counsel, and Named Plaintiffs, respectively.

(F)    **Uncashed Checks.** Class Members shall have one hundred eighty (180) days after the Settlement Checks are mailed to cash their respective Settlement Checks. Any uncashed Settlement Checks, amounts attributable to individuals who opted out as set forth in this Agreement, and all other amounts remaining in the Settlement Fund one hundred ninety (190) days after payment will remain with and revert to Defendants.

**3.2.    Professional Fees and Costs.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees of no more than one third of the Settlement Fund ($20,000) as well as reimbursement of their actual litigation expenses and costs not to exceed Five Hundred Dollars ($500). These fees and costs shall come out of the Settlement Fund. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not increase the Settlement Fund. The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the

Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' and costs shall not terminate this Agreement or otherwise affect the Court's Final Approval.

### 3.3.  Administrator's Fees and Mediator's Fee.

(A)  Defendants will pay the fees and expenses of the Claims Administrator (the "Administrator's Fee") out of proceeds from their insurer.   The payment of the Administrator's Fee is in addition to, and not a part of, the Settlement Fund.  However, if Defendants' insurer does not fully reimburse or otherwise cover the Administrator's Fee paid by Defendants, the Parties agree that they will negotiate in good faith the payment of the Claims Administrator's fee or, at Defendants' option, Defendants will administer the notice process and cutting and mailing checks themselves.

(B)  In connection with a private mediation regarding the Claims, held on March 4, 2020, the mediator, Ruth Raisfeld, submitted an invoice for her services in the amount of Ten Thousand Dollars and NO/Cents ($10,000) (the "Mediator's Fee") to be split equally between the Parties.  Within forty-five (45) days of the Final Effective Date, Defendants shall reimburse Plaintiffs' Counsel for the Five Thousand Dollars and NO/Cents ($5,000) it paid toward the Mediator's Fee, provided that Plaintiffs' Counsel first provide proof of payment.  The reimbursement of Plaintiffs' portion of the Mediator's Fee is in addition to, and not a part of, the Settlement Fund.

### 3.4.  Tax Characterization.

(A)  Except as set forth below, settlement payments to the Class Members will be allocated as follows for tax purposes: (i) 50% in consideration for time worked as back-wage payments and/or wage income subject to W-2 reporting; and (ii) 50% in consideration or liquidated damages, penalties, and interest as non-wage payments subject to 1099 reporting.

(B)  All Wage Payments (*i.e.,* the portion set forth in Section 3.4(A)(i) above) shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2.  All Non-Wage Payments (*i.e.,* the portion set forth in Section 3.4(A)(ii) above) shall be made without any tax withholdings and shall be reflected on a Form 1099 issued to each Class Member.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without any withholdings, and Forms 1099 shall be issued for this payment.  Any Enhancement Award payments shall be made without any withholdings and shall be reported on a Form 1099 for each payment.  Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in this Section 3.4.

(C)  Defendants shall pay the employer's share of FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Wage Payments.  The Administrator shall be responsible for making all withholdings from

employees' settlement payments required pursuant to any federal, state, or local tax law or regulation, with respect to the Wage Payments.

### 3.5. Hold Harmless.

(A)    With respect to payments received pursuant to this Agreement that are not characterized as W-2 wage income, the Plaintiffs and Class Members assume full responsibility for any and all federal, state, and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state, or local government, administrative agency or court determines that any individual or entity and/or Defendants are liable for any failure by any Named Plaintiff, Class Member, or Defendant to pay federal, state, or local income or employment or payroll taxes with respect to any payment received pursuant to this settlement that is not characterized as W-2 wage income, Plaintiffs agree to hold Defendants harmless, and indemnify Defendants from any payments the Defendants may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS tax form 1099 and any Plaintiff's failure to pay any taxes that any such individual  or entity owes related to said income.

(B)    With respect to payments received pursuant to this Agreement that are characterized as Attorneys' Fees, Class Counsel assumes responsibility of any and all federal, state, and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state, or local government, administrative agency, or court determines that Class Counsel is liable for any federal, state, or local taxes or contributions with respect to any payment received pursuant to this settlement as characterized as Attorneys' Fees, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

## 4.    RELEASE.

### 4.1.    Release of Claims.

(A)    **Release of New York State Wage and Hour Claims.**  Upon the Final Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt out of this Agreement, on his or her behalf, and on behalf of his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Defendants and their respective direct and/or indirect, past and/or present, affiliates, related entities, subsidiaries (including and not limited to any grandchild entities, great grandchild entities, and so on), parents (including and not limited to any grandparent, great grandparent entities, and so on) divisions, shareholders, members, predecessors, successors, and/or assigns, including but not limited to Petit Boucherie LLC, as well as each of their (including but not limited to

Defendants') past and present officers, directors, trustees, fiduciaries, insurers, owners, investors, attorneys, administrators, employees, agents, representatives, shareholders, members, joint employers, managers, predecessors, successors, and assigns, in their individual and official capacities, and all persons or entities acting by, through, under or in concert with any of them (together with Defendants, collectively the "Releasees"), from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with any and all of the Releasees under state or local law, including, but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, penalties, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover the tip credit, spread-of-hours claims, meal break claims, meal credit claims, uniform maintenance claims, uniform reimbursement claims, and all other claims that were or could have been asserted in this Litigation, whether known or unknown, under state and/or local wage and hour laws (including, but not limited to, the New York Labor Law ("NYLL"), New York Hospitality Industry Wage Order, New York Order For Miscellaneous Industries and Occupations, and the New York Wage Theft and Prevention Act), through the date on which the Court grants final approval of the Final Settlement Agreement and Notice. This release includes all claims for all damages arising from any such released claims, including but not limited to claims for liquidated damages, interest, and attorneys' fees and costs.

        (B)    **Release of FLSA Claims.**  Upon the Final Order being issued, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt out of this Agreement, on his or her behalf, and on behalf of his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with any and all of the Releasees under federal law, including, but not limited to, any and all claims for unpaid wages, tips, gratuities, service charges, administrative or other mandatory charges, penalties, overtime pay, claims to recover the tip credit, and all other claims that were or could have been asserted in this Litigation, whether known or unknown, under federal wage and hour laws (including, but not limited to, the Fair Labor Standards Act ("FLSA")), through the date on which the Court grants final approval of the Final Settlement Agreement and Notice. This release includes all claims for all damages arising from any such released claims, including but not limited to claims for liquidated damages, interest, and attorneys' fees and costs.

        (C)    All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

        "**FINAL RELEASE OF CLAIMS:**

        By endorsing this check, I agree that in connection with the collective and class action lawsuit styled *Gabilly. v. Boucherie LLC, et al.,* I hereby release Defendants from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law, and/or any other applicable wage and hour law, rule, or regulation brought or which could have been bought in this litigation, including, but not limited, minimum wage, overtime, gratuity, and notice claims.

_____    Dated: _____
Signature"

        Any modification or amendment of the above-language by the Class Member, at Defendants' discretion, may not be accepted, and may void the Settlement Check.  The Administrator shall provide Defendants signed copies of each Settlement Check after they have been cashed.

        (D)      In addition to the waivers and releases contained in 4.1(A)-(B) above, and in consideration of the Enhancement Awards received under 3.1(B), each Named Plaintiff (except for Gabriel Mustin) knowingly and voluntarily, on his behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims arising up to the date of this Agreement, both known and unknown, which Named Plaintiffs (except for Gabriel Mustin) have or may have against Releasees, including, but not limited to, any violation of (each as amended): Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1866 and 42 U.S.C. § 1981, et seq.; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; the Federal Workers Adjustment and Retraining Notification Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act; the Employee Retirement Income Security Act of 1974 ("ERISA"); the Family and Medical Leave Act; the Immigration Reform and Control Act; the Equal Pay Act; the Fair Labor Standards Act; the Fair Credit Reporting Act; Section 409A of the Internal Revenue Code; the Occupational Safety and Health Act; the Employee Polygraph Protection Act; the Uniformed Services Employment and Reemployment Rights Act; the New York Executive Law; the New York State Human Rights Law; the New York State Civil Rights Law; the New York City Human Rights Law; the New York Labor Law; the New York Wage Theft Prevention Act; the New York Hospitality Industry Wage Order; the New York Wage Order for Miscellaneous Industries and Occupations; the New York Worker Adjustment and Retraining Notification Act; the New York Corrections Law; the New York Paid Family Leave Law; the New York City Fair Chance Act; the New York City Earned Safe and Sick Time Act; the New York City Commuter Benefits Law; the New York City Stop Credit Discrimination in Employment Act; the New York City Freelance Isn't Free Act; the New York City Temporary Schedule Change Law; the New York Civil Practice Law and Rules; the New York General Obligations Law; and/or any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including but not limited to claims for liquidated damages, interest, and attorneys' fees and costs.

        (E)      Except as provided in this Agreement, upon payment of the Attorneys' Fees, expenses, and costs approved by the Court, Plaintiffs' Counsel and the Plaintiffs hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against Defendants for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Plaintiffs and/or Class in this matter.  Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses, and costs associated with Plaintiffs' Counsel's representation in the Litigation.

## 5.     INTERPRETATION AND ENFORCEMENT.

**5.1.     Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2.     No Assignment.**   Class Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof, or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3.     Non-Admission of Liability**. By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendants in no way admit the suitability of this case for class or collective action litigation other than for the purposes of settlement.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission of evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all complaints filed in the Litigation; and (ii) are not, shall not be deemed to be, and may not be used as an admission of evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible as evidence in any action or proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.  Plaintiffs and the Class will not be deemed or considered a prevailing party or parties.

**5.4.     Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement, including but not limited to the MOU.

**5.5.     Binding Effect; Third-Party Beneficiaries**. This Agreement shall be binding upon the Parties and, with respect to the Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.  The Parties agree that, except only for the Releasees who are explicitly designated by the Parties as the sole intended third-party beneficiaries of this Agreement, only the Parties themselves are the intended beneficiaries of this Agreement,

**5.6.     Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all of the terms and conditions of this Agreement at arms' length and with the aid of their own counsel that they independently retained.  All terms and conditions of this Agreement

in the exact form set forth in this Agreement are material to the Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.7.    **Captions.** The captions or heading of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.8.    **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.9.    **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect, except for Sections 3.1 and 4.1, which are material terms of this Agreement and shall not be severable from the remainder of the Agreement.

5.10.    **Governing Law.** This Agreement shall in all respects be interpreted, enforced, and governed by the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.11.    **Continuing Jurisdiction.** The Parties shall request that the Court retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of the Agreement and of the settlement contemplated thereby, although the Court shall be solely responsible in its discretion for determining whether it will retain jurisdiction over this Agreement.

5.12.    **Waivers, etc. to Be In Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.13.    **When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its full execution and approval by the Court.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.14.    **Representations.** As of the date Class Counsel executes this Agreement, Class Counsel represents that it does not know of any claims currently threatened or asserted against any of the Defendants, and/or any claims that may be forthcoming in the future against

DocuSign Envelope ID: 1EE43B23-8501-48B3-B4DF-336A42E749AC

any of the Defendants except for this Litigation and the EEOC Charge No. 520-2020-04441 brought by Gabriel Mustin.

**5.15.    Facsimile, Electronic, and Email Signatures.** Any party may execute this Agreement by wet ink signature, electronic signature, facsimile signature, and/or .pdf signature, and may do so by causing its/his/her counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email, and/or electronically to counsel for the other party. Any signature made and transmitted by facsimile, email, and/or electronically for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, email, and/or electronically.

**WE AGREE TO THESE TERMS,**

**PLAINTIFFS**

_____
**Julien Gabilly, Named Plaintiff**
Date: _____

_____
**Marius Zemache, Named Plaintiff**
Date: _____

_____
**Yudum Ozturk, Named Plaintiff**
Date: _____

**DEFENDANTS**

_____
**Boucherie LLC, Defendant**
Date: 9/1/2020

_____
**Boucherie PAS LLC, Defendant**
Date: 9/1/2020

_____
**Emil Stefkov, Defendant**
Date: 9/1/2020

**ON BEHALF OF THE CLASS**
*and on behalf of The Klein Law Group,*
*as to Sections 3.1(B), 3.2, 3.3(A), 3.5(B),*
*4.1(E), 5.2, 5.3, and 5.14 only,*

By: _____
THE KLEIN LAW GROUP
Darren P.B. Rumack, Esq., Class Counsel

3449107.5

any of the Defendants except for this Litigation and the EEOC Charge No. 520-2020-04441 brought by Gabriel Mustin.

**5.15.    Facsimile, Electronic, and Email Signatures.** Any party may execute this Agreement by wet ink signature, electronic signature, facsimile signature, and/or .pdf signature, and may do so by causing its/his/her counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email, and/or electronically to counsel for the other party. Any signature made and transmitted by facsimile, email, and/or electronically for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, email, and/or electronically.

## WE AGREE TO THESE TERMS,

**PLAINTIFFS**

_____
**Julien Gabilly, Named Plaintiff**
Date: _09/01/2020_____

_____
**Marius Zemache, Named Plaintiff**
Date: _____

_____
**Yudum Ozturk, Named Plaintiff**
Date: _____

**DEFENDANTS**

_____
**Boucherie LLC, Defendant**
Date: _____

_____
**Boucherie PAS LLC, Defendant**
Date: _____

_____
**Emil Stefkov, Defendant**
Date: _____

**ON BEHALF OF THE CLASS**
*and on behalf of The Klein Law Group,*
*as to Sections 3.1(B), 3.2, 3.3(A), 3.5(B),*
*4.1(E), 5.2, 5.3, and 5.14 only,*

By: _____
    THE KLEIN LAW GROUP
    Darren P.B. Rumack, Esq., Class Counsel

Page 19 of 19

3449107.5

any of the Defendants except for this Litigation and the EEOC Charge No. 520-2020-04441 brought by Gabriel Mustin.

    **5.15.  Facsimile, Electronic, and Email Signatures.** Any party may execute this Agreement by wet ink signature, electronic signature, facsimile signature, and/or .pdf signature, and may do so by causing its/his/her counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email, and/or electronically to counsel for the other party. Any signature made and transmitted by facsimile, email, and/or electronically for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, email, and/or electronically.

## WE AGREE TO THESE TERMS,

**PLAINTIFFS**

    **Julien Gabilly, Named Plaintiff**
Date: _____

    **Marius Zemache, Named Plaintiff**
Date: _09_ _02_ _2020_

    **Yudum Ozturk, Named Plaintiff**
Date: _____

**DEFENDANTS**

    **Boucherie LLC, Defendant**
Date: _____

    **Boucherie PAS LLC, Defendant**
Date: _____

    **Emil Stefkov, Defendant**
Date: _____

**ON BEHALF OF THE CLASS**
*and on behalf of The Klein Law Group,*
*as to Sections 3.1(B), 3.2, 3.3(A), 3.5(B),*
*4.1(E), 5.2, 5.3, and 5.14 only,*

By: _____

    THE KLEIN LAW GROUP
    Darren P.B. Rumack, Esq., Class Counsel

Scansionato con Cam

any of the Defendants except for this Litigation and the EEOC Charge No. 520-2020-04441 brought by Gabriel Mustin.

      **5.15.    Facsimile, Electronic, and Email Signatures.** Any party may execute this Agreement by wet ink signature, electronic signature, facsimile signature, and/or .pdf signature, and may do so by causing its/his/her counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email, and/or electronically to counsel for the other party. Any signature made and transmitted by facsimile, email, and/or electronically for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, email, and/or electronically.

**WE AGREE TO THESE TERMS,**

**PLAINTIFFS**                               **DEFENDANTS**

_____      _____

**Julien Gabilly, Named Plaintiff**      **Boucherie LLC, Defendant**

Date: _____      Date: _____

_____      _____

**Marius Zemache, Named Plaintiff**      **Boucherie PAS LLC, Defendant**

Date: _____      Date: _____

_____      _____

**Yudum Ozturk, Named Plaintiff**      **Emil Stefkov, Defendant**

Date: 9/02/2020     _y.o._      Date: _____

**ON BEHALF OF THE CLASS**

_and on behalf of The Klein Law Group,_
_as to Sections 3.1(B), 3.2, 3.3(A), 3.5(B),_
_4.1(E), 5.2, 5.3, and 5.14 only,_

By: _____

        THE KLEIN LAW GROUP
        Darren P.B. Rumack, Esq., Class Counsel